# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | |
|---|---|
| CHRIS COMEENS, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case Number: 6:14-cv-00521-JHE |
| HM OPERATING, INC., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

On April 24, 2015, Plaintiffs moved to compel the deposition of Brian Redpath, formerly of Linsalata Capital Management, LLC, who Plaintiff Chris Comeens had attested to being extensively involved with the facility at issue. (Doc. 66). On May 15, 2015, Plaintiffs moved to modify the Court's order granting jurisdictional discovery to allow them to take the deposition of Dennis Kebrdle, an agent of Defendant Chikol, LLC, who was involved with the facility's closure. (Doc. 70). Defendants Linsalata Capital Partners Fund IV, L.P. and Linsalata Capital Partners Fund IV N-Q, L.P. ("the Funds") opposed both motions. (Docs. 67 & 75). A telephone motion hearing was held on May 27, 2015,[1] at which the undersigned determined further briefing was necessary, specifically addressing which alleged gaps in prior testimony Plaintiffs believed Kebrdle's testimony could fill and how that testimony would be relevant to the jurisdictional

---

[1] The court reporter has advised the Court there is a dispute between the parties regarding portions of the transcript from the May 27, 2015 motion hearing. It is the undersigned's understanding the parties have unofficial copies of the transcript and the Funds have compiled a list of corrections. The Funds are to provide their list to the other parties by **June 19, 2015**. The parties are then to meet and confer in an attempt to settle the dispute and file a joint status report by **June 26, 2015**, setting out any agreed-upon changes and the parties' respective positions on any remaining disputes.

question, with particular reference to the factors set out in *Duff v. Southern Railway Co.*, 496 So. 2d 760, 762 (Ala. 1986), and *United Steelworkers of America v. Connors Steel*, 855 F.2d 1499, 1505 (11th Cir. 1988). (Doc. 76). The supplemental briefing has since been completed. (Docs. 80 (Sealed) & 84 (Sealed)).[2] The undersigned having considered the briefs and arguments at the hearing, the motions are **GRANTED**.

## I. Analysis

### A. Motion to Compel Deposition of Brian Redpath

In addition to stating Redpath was a regular at the factory and claimed to work for Linsalata, Comeens's affidavit further asserted that Redpath had brought in the CEO of HM Operating and subsequently fired him; that Redpath had answered to Linsalata, not HM Operating; and Redpath came regularly to the factory and gave direction to HM Operating employees until "the latter part of 2013." (Doc. 66 at 4-6). Plaintiffs assert the Funds responded to interrogatories that Redpath was a director of HM Holding Company and could be contacted through the Funds' counsel, and then responded to Plaintiffs' request to depose Redpath by stating he was not an employee of the Funds or under their control but would work with Plaintiffs on scheduling a deposition. (*Id.* at 6-7). The Funds subsequently informed Plaintiffs Redpath would not voluntarily sit for a deposition and stated they would oppose any efforts to depose him. (*Id.* at 7). Plaintiffs have been unable to serve a subpoena on Redpath personally, (*id.* at 7-8), and now seek to compel his deposition or, alternatively, have the Funds provide contact information, (*id.* at 11).

The Funds respond that not only do they not have control over Redpath to produce him for deposition, but Plaintiffs are also not entitled to his deposition under the discovery order

---

[2] These briefs were sealed under the Agreed Confidentiality Order, (doc. 57), as containing confidential deposition testimony and exhibits. (Docs. 78, 79, 82, & 83).

2

because Redpath was no longer involved with the facility after late 2013 and Plaintiffs are only entitled to three depositions "from the Linsalata Funds" and to discovery "related to the facility, before and around the decision to close it." (Doc. 67 at 6). They further contend they should not have to provide his contact information because it was not required by the discovery order or Plaintiffs' own discovery requests. (*Id.* at 7-8). In reply, Plaintiffs stand on their original motion, contending the Funds have not argued the requested relief would cause any undue burden or prejudice but merely do not want to cooperate. (Doc. 68 at 1-2).

Although the evidence does indicate Redpath was no longer involved with the facility at the time of the closure, that fact does not make his testimony completely irrelevant. The Funds correctly assert the jurisdictional inquiry is to what extent the Funds had connections with HM Operating and HM Holding at the time of the facility's closure, (doc. 67 at 7); however, establishing the extent of connections shortly before the closure would provide important context to the remaining evidence and is not entirely irrelevant. Evidence indicates Redpath was involved with the facility up to the end of 2013 and the closure occurred in March 2014. If Plaintiffs can serve Redpath, they should be allowed to depose him. The Funds are also correct, however, that, because Redpath is no longer an employee of any of the Linsalata entities, they cannot compel him to sit for deposition. The Funds have indicated, though, that they have a phone number, by which they have been contacting Redpath, and his social security number.

Accordingly, Plaintiffs' motion to compel Redpath's deposition, (doc. 66), is due to be **DENIED**. Their alternative motion to compel the Funds to provide up-to-date contact information for Redpath, (doc. 66), is due to be **GRANTED**.

### B. Motion Regarding Deposition of Dennis Kebrdle

Plaintiffs also move to take the deposition of Dennis Kebrdle because they believe he can clear up the Funds' allegation Chikol was solely in charge of the closing and can fill in gaps in the deposition testimony of Mike Faremouth and Steve Perry. (Doc. 70 at 1-2). Plaintiffs originally asserted these "gaps" in Faremouth and Perry's testimony but did not identify the gaps or why Kebrdle could fill them in. (*Id.* at 2). In their supplemental briefing on that issue, Plaintiffs list fifteen instances in which Faremouth and Perry could not answer deposition questions involving Kebrdle and set out which jurisdictional factor Plaintiffs believe the testimony would answer. (Doc. 80).

As a threshold issue, Plaintiffs repeatedly refer to the issue of who was responsible for the closure of the facility and the failure to provide a timely WARN notice as "the heart of the specific jurisdictional question." (Doc. 80). The Funds assert this is incorrect and the "**only** inquiry before the Court is whether the Linsalata Funds have sufficient connections to HM Operating and HM Holding to be subject to jurisdiction in Alabama." (Doc. 84 at 2). The Funds' statement of the inquiry is correct, but it is not so clear Plaintiffs' statement is "incorrect." To the extent Plaintiffs mean "responsible" in the sense of "liable," the statement would be incorrect because that issue would not be the jurisdictional issue, but the ultimate issue; however, to the extent they simply mean "who was responsible" in the sense of the person or entity who decided or directed the facility be closed, that is a proper jurisdictional inquiry that goes to whether the HM entities were operating independently and with proper formality. The Court assumes Plaintiffs intended the latter sense.

Two instances in particular that clearly go to the jurisdictional question are (1) Perry's hearsay testimony about a conversation with Kebrdle in which Kebrdle discussed the closure,

and (2) Perry's statements at various times that Chikol, Kebrdle, or others not associated with the Funds directed the facility closure. (Doc. 80 at 7). Plaintiffs contend they would ask Kebrdle who made the decision to close the facility and, if it was he, on whose behalf he was acting in doing so. (*Id.* at 8). Kebrdle's testimony regarding who directed the facility closure is certainly relevant to the jurisdictional issue.

The Funds contend Perry and Faremouth have clearly testified they did not instruct, direct, or control HM after they left the board; any suggestion Kebrdle would testify differently is "pure speculation"; and the Court's inquiry should end here "because Plaintiffs cannot escape the undisputed testimony that individuals associated with the Linsalata Funds had no part in the decision to close the [facility] and terminate employees, and additional testimony from Kebrdle will not change that clearly established fact." (Doc. 84 at 3-4 & 9-10). While stating Kebrdle will testify differently than Perry and Faremouth may be speculative, the implied assertion he would testify in perfect accord with Perry and Faremouth is based on nothing more than the assumption Perry and Faremouth are not only telling the truth but the whole truth (not just as they know and understand it but as to all relevant events). In effect, the Funds' argument is Plaintiffs should not be allowed to depose Kebrdle for potentially disputing testimony because Perry and Faremouth's testimony is currently undisputed. As an insider of the business at issue, Kebrdle will likely be able to directly answer questions about the closure decision, and his testimony would be particularly useful to determination of the jurisdictional question.

Plaintiffs also point to emails sent to Perry as evidence Kebrdle believed he had to keep the Funds up to date on goings-on regarding the pending sale and closing of the facility. (Doc. 80 at 8-13). Plaintiffs assert Kebrdle's testimony about the emails would go toward the independence and formal legal requirements factors of the jurisdictional analysis. (*Id.*). The

Funds contend generally that the email exchanges between Kebrdle and Perry were just "FYIs" to an investor. (Doc. 84 at 6-8). Seeing as the email exchanges are reasonably susceptible to both interpretations, Kebrdle's testimony could clarify the purpose of the emails and clear up to what extent Kebrdle was reporting to an investor versus an unofficial superior.

Plaintiffs also point to evidence (1) Kebrdle and HM Operating CEO Sam Federico referred to Perry, Faremouth and Redpath as "LinCap" (a reference to Linsalata Capital) instead of as directors and officers of the HM entities and (2) some of the "Chikol Interim Reports" generated by Federico and/or Kebrdle about the facility were sent only to "LinCap" and not other interested parties. (Doc. 80 at 13-15). Plaintiffs contend this indicates control from the Linsalata entities instead of an independent board of directors, as well as potential breakdown in the legal formalities. (*Id.*). The Funds contend, relying solely on Perry and Faremouth's testimony, that the undisputed evidence shows the reference in the reports was a "drafter's error." (Doc. 84 at 9). They also assert there is nothing improper about a company sending periodic updates to an investor. (*Id.*). As previously stated, neither of these are reasons to prevent Plaintiffs from obtaining Kebrdle's side of the story.

Accordingly, Plaintiffs' motion to modify the order granting limited jurisdictional discovery to allow for the deposition of Dennis Kebrdle, (doc. 70), is due to be **GRANTED**.

## II. Conclusion

Based on the foregoing, it is **ORDERED**:

1. Plaintiffs' motion to compel the deposition of Brian Redpath, (doc. 66), is **DENIED**.

2. Plaintiffs' alternative motion for production of Redpath's contact information, (doc. 66), is **GRANTED**. The Funds will, by **June 25, 2015**, provide Plaintiffs' counsel with Redpath's phone number and his social security number, both of which will be subject to the Confidentiality Order already governing this case, (doc. 57). Further, Plaintiffs will have until **July 9, 2015**, to serve Redpath for deposition.

3. Plaintiffs' motion to modify the order granting limited jurisdictional discovery to allow for the deposition of Dennis Kebrdle, (doc. 70), is **GRANTED**.

4. The time for jurisdictional discovery is extended to **August 3, 2015**. No further extensions will be allowed absent exceptional circumstances.

5. The Funds are to provide the other parties with their list of proposed corrections to the May 27, 2015 motion hearing transcript by **June 19, 2015**; the parties are to meet and confer in an attempt to settle any dispute; and a joint status report, setting out any agreed-upon changes and the parties respective positions on any remaining disputes, is due by **June 26, 2015**.

DONE this 18th day of June 2015.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE