UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| CHRIS COMEENS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case Number: 6:14-cv-00521-JHE |
| ) | |
| HM OPERATING, INC., et al., ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OPINION AND ORDER[1]

On May 20, 2016, Plaintiffs, on behalf of themselves and the preliminarily approved settlement class, together with Defendants Chikol, LLC; Linsalata Capital Partners Fund IV, L.P.; and Linsalata Capital Partners Fund IV N-Q, L.P. (together, "the Linsalata Funds"),[2] filed a joint motion for an order (1) preliminarily approving their settlement agreement, (2) approving the form and manner of notice to the proposed settlement class, (3) scheduling a final fairness hearing, and (4) finally approving settlement. (Doc. 120). On June 13, 2016, the Court preliminarily approved the settlement class; appointed Plaintiffs and their counsel as class representatives and class counsel, respectively; approved the class notice and notice procedure; and set a fairness hearing for August 12, 2016. (Doc. 127). After notice was sent and responses received, class counsel filed a supplemental affidavit in support of the joint motion. (Doc. 128).

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 126).

[2] The Linsalata defendants were identified by their trade name in the Second Amended Complaint as "Linsalata Capital Partners." (*See* doc. 14). By joint motion, (doc. 25), the parties named above were substituted on August 6, 2014. (Doc. 27). HM Operating Inc. (a/k/a Harden Manufacturing Corporation) was originally also a defendant in the Second Amended Complaint, (doc. 14), but Plaintiffs voluntarily dismissed it without prejudice on June 9, 2016. (Doc. 125). It is, however, included among the parties who entered into the settlement agreement. (Doc. 120-1 at 1).

Upon consideration of the motion, the supplemental affidavit, and the discussions at the fairness hearing, the joint motion for approval of the settlement agreement, (doc. 120), is **GRANTED**.

## I. Background

On March 24, 2014, Plaintiffs brought this suit against Defendants under the Worker's Adjustment and Retraining Notification Act ("WARN Act"), alleging Defendants were "a single employer" for purposes of the act and had violated its provisions when they closed down dismissed Defendant HM Operating, Inc.'s bedroom furniture plant in Haleyville, Alabama, without giving the statutorily required sixty-day notice to the workers. (Docs. 1 & 14). On August 5, 2014, the Linsalata Funds moved to dismiss the complaint against them for lack of personal jurisdiction. (Doc. 23). Plaintiffs opposed the motion and sought jurisdictional discovery, (doc. 32), which was granted, (doc. 45). Two weeks later, the Funds moved to certify questions to the Alabama Supreme Court, (doc. 46), which the undersigned granted, (docs. 58 & 59), but the state court declined to answer, (doc. 62). After a series of discovery disputes were litigated, jurisdictional discovery was completed, and the parties' supplements to their briefs on the jurisdictional issues and regarding Plaintiffs' alternative request for transfer came under submission on December 7, 2015. (Docs. 102, 103, 107, 108, & 109). On March 16, 2016, the parties moved to stay the case for sixty days while they attempted mediation, (doc. 113), and the parties filed the joint motion for approval of their mediated settlement on May 20, 2016, (doc. 120).

On June 13, 2016, the Court preliminarily certified the settlement class, for settlement purposes only, and approved a notice that was sent to all members of the class advising them of their ability to opt out of the settlement and of their right to appear in person or by counsel at the

fairness hearing. (Doc. 127). The class, as defined by the settlement agreement and preliminarily approved in that order, is as follows:

> [A]ll employees of HM Operating, Inc. ("MH") who do not opt out and who were terminated without cause on or after March 12, 2014, as part of, or as the foreseeable result of, the plant closing at the facility located at 7155 State Highway 13, Haleyville, Alabama 35565, which occurred on or about March 12, 2014.

(*Id.* at 2-3). After the passing of the response deadline, four members had opted out and no objections had been filed.[3] (Doc. 128 at 3). On August 12, 2016, the parties' attorneys appeared at the fairness hearing and supplemented the filed documents on the record. No class members appeared individually, in person or by counsel, at the hearing to object to approval of the settlement.

## II. Analysis

The remaining considerations for this Court are to approve final certification of the settlement class and the reasonableness of the settlement agreement and of its agreed-upon award of fees and costs to class counsel.

### A. Final Approval of the Class

Rule 23 of the Federal Rules of Civil Procedure governs class actions and, for purposes of class certification, requires that all of the requirements of section (a) be met along with at least one of the conditions set forth in section (b). FED. R. CIV. P. 23(a), (b). The requirements of section (a) are that

(1) the class is so numerous that joinder of all members is impracticable ["numerosity"];
(2) there are questions of law or fact common to the class ["commonality"];
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and

---

[3] The names of the four potential class members who opted out are: Cynthia Vogele; Irene Alvarado; Fermin Martinez and James Kauffman. (Doc. 128 at 3 n.3).

>   (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).  Because the parties contend this case meets the conditions of subsection (b)(3), the relevant requirement from that subsection is that "[1] the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  FED. R. CIV. P. 23(b)(3).

### 1. Rule 23(a) Requirements

When determining whether the joinder of all members is "impracticable," "generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (quoting 3B Moore's Federal Practice ¶ 23.05[1] at n.7 (1978)).  The 269 class members here certainly meet the standard.  *See Cox*, 784 F.2d at 1557 (finding the trial court abused its discretion in decertifying the class for lack of numerosity after reversing the trial judge's ruling that had reduced the class size from 240 to 47).

The commonality requirement requires only that there be questions of law or fact common to the class, not to be confused with the higher "predominance" requirement of Rule 23(b)(3).  *See Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1268 (11th Cir. 2009).  Here, there are many common questions of law and fact because the majority of the disputed issues involve Defendants and their actions, *e.g.*, (1) whether there was a "plant closing" as defined by the WARN Act, (2) whether Defendants constitute a "single employer," (3) whether Defendants' "unforeseeable business circumstances" defense applies, and (4) whether Defendants acted in good faith.  These issues are common to the entire class.  Similarly, because this action's only claim is the WARN Act claim that is common to all of the plaintiffs, class members and

representatives alike, "the claims or defenses of the representative parties are typical of the claims or defenses of the class."

Lastly, "a party's claim to representative status is defeated only if the conflict between the representative and the class is a fundamental one, going to the specific issues in controversy." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016). As there do not appear to be any substantial individual issues (for the class representatives or otherwise), there do not appear to be any fundamental conflicts between the class representatives and the rest of the class. The representatives have hired competent counsel, who have been appointed class counsel in many previous WARN Act actions, (doc. 120-2 at 8-9), and have zealously prosecuted this case to date.

### 2. Rule 23(b)(3) Requirements

This subsection requires the court to find (1) the common questions "predominate" over questions affecting individual members and (2) a class action is superior to other methods for handling the matter "fairly and efficiently." Rule 23(b)(3). "Common issues can predominate *only* if they have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member." *Carriuolo*, 823 F.3d at 985 (internal quotation marks omitted). Among the matters pertinent to superiority are the following:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

*Id.* at 989 (quoting FED. R. CIV. P. 23(b)(3)).

Because the questions of law and fact at issue in this case are primarily about Defendants and their actions, they are all the same for the entire class, and there do not appear to be any substantial individual issues for any of the settlement class members.  Further, the damages for sixty days' back pay would likely be insufficient for most individual plaintiffs to bring suit on their own; no other litigation is in progress by the class members; consolidation will avoid the potential for a multiplicity of suits in multiple courts; and management is not difficult because the class is well-defined and has already been identified.  As a result, common questions predominate and class-wide adjudication conserves judicial resources and advances judicial efficiency.

Because all of the requirements of subsection (a) and at least one of the alternative requirements of subsection (b) have been met, the Court confirms its prior preliminary approval of the Settlement Class.

## B. Final Settlement Approval

The court reviews a class settlement to ensure it is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  There is a strong presumption in favor of class action settlements, *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("Particularly in class action suits, there is an overriding public interest in favor of settlement."),[4] and the Eleventh Circuit has instructed district courts to consider the following factors:

> (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

---

[4] The decisions of the United States Court of Appeals for the Fifth Circuit, as that court existed on September 30, 1981, handed down prior to the close of business that day, are binding precedent in the Eleventh Circuit.  *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981).

*Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1240 (11th Cir. 2011). The absence of collusion is also imperative, and, in the absence of fraud or collusion, the judgment of experienced counsel is not only relevant but is extremely persuasive. *See Cotton*, 559 F.2d at 1330.

There does not appear to have been any collusion here. Both sides are represented by counsel, who have zealously prosecuted and defended the case, and the settlement was ultimately reached through arms' length negotiation with a mediator, (doc. 120-2 at 4). Further, the expected complexity, expense, and duration of this litigation weigh very strongly in favor of settlement: the case has already been going on for two-and-a-half years, in which the parties have been litigating the Court's personal jurisdiction over the Linsalata Funds, a dispute that is ongoing and could potentially be appealed before moving on to the merits of the case. In addition, because the Funds are the only non-defunct party, Plaintiffs would have to prove "single employer" status on top of the WARN Act violation to have an opportunity to collect any recovery. (Doc. 128 at 13). As a result, there is a strong likelihood Plaintiffs could receive nothing from continued, protracted, expensive litigation, even if successful against the other defendants. The settlement, before deductions, is roughly 28% of the maximum theoretical damages of the proposed class, (doc. 120 at 17), but the high risks and expense associated with continued litigation place this within the realm of a reasonable settlement. Although four potential class members opted out, no one opposed the settlement.

Considering the expected duration and expense of continued litigation, the Court finds that, under the circumstances, the settlement is reasonable. All settlement class members who did not exercise the right to opt out of the settlement class are bound by this Order and the terms of the settlement agreement.

### C. Approval of Class Counsel's Fees

In class action settlements, in which the agreement creates a common fund from which to pay claims, the courts review the reasonableness of class counsel's fees using the "percentage method." *See Camden I Condominium Association v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Noell v. Suncruz Casinos*, No. 808-CV-683-T-30TBM, 2009 WL 541329, at *1 (M.D. Fla. Mar. 4, 2009).

In *Dunkle*, the Eleventh Circuit noted courts have generally approved counsel fees of 20% to 30% but that higher than 50% was known to occur. 946 F.2d at 774-75. It also noted many courts view 25% as a benchmark to be adjusted on individual circumstances, using the twelve *Johnson* factors.[5] *Id.* at 775. Subsequent courts have considered this process implicitly approved in this circuit. *See Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1203 (S.D. Fla. 2006) (using 25% as a floor for a fee award); *Carnegie v. Mut. Sav. Life Ins. Co.*, No. CV-99S3292NE, 2004 WL 3715446, at *36-37 (N.D. Ala. Nov. 23, 2004) (finding counsel's request was "almost precisely the median, 25% benchmark identified and implicitly approved by the Eleventh Circuit"). Since *Dunkle*, analyses of common-fund cases have shown the average fee courts have approved to be around one-third of the recovery. *See Wolff v. Cash 4 Titles*, No. 03-22778-CIV, 2012 WL 5290155, at *5 (S.D. Fla. Sept. 26, 2012).

---

[5] The twelve factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *Dunkle*, 946 F.2d at 772 n.3 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)).

Plaintiffs' counsel here seeks one-third of the class recovery, plus costs[6], as their attorney's fee and costs. After having the opportunity to review the agreement, including the agreed-upon fee for class counsel, none of the class members remaining in the settlement objected. Taking 25% as the baseline, Plaintiffs' counsel is reasonable to ask for 33⅓ percent, considering class counsel's experience, (doc. 128 at 5-9), and the complexity and novelty of WARN Act cases, combined with the additional complexity and duration of the jurisdictional issues particular to this case. Although it is early in the case procedurally, the parties have already done considerable briefing and discovery on the jurisdictional issue over a two-and-a-half year span, and, if the case had gone forward, there was a substantial risk of losing the case against the only party not now defunct. Accordingly, the Court finds the fees are reasonable under the circumstances.

### III. Conclusion

Accordingly, it is **ORDERED** the joint motion, (doc. 120), is **GRANTED,** and the settlement agreement, attached to the joint motion, (doc. 120-1), is **APPROVED** as fair and reasonable. The parties are authorized to implement its terms. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order for two years from the date of this order.

DONE this 18th day of August 2016.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[6] Currently, costs are under $20,000. (Doc. 128 at 10). Plaintiffs' counsel expects the final amount to stay under the $25,000 estimate used for purposes of settlement. (*Id.*).